We'll take the next case before us, which is, um, which is, um, Guarnieri. Not the quartet, the man. Good quartet. Just wait a minute while we select ourselves. Okay, I'm sorry, Ms. Michalczyk, you can come up. I just didn't want you to start talking before we could give you our full attention. Oh, no problem. May it please the court, my name is Caroline Michalczyk and I represent the appellants and cross-appellees in this matter. There are a number of them, Duryea Borough, Duryea Borough Council, Borough Secretary Morial, and Councilmen and women, Orquist, Domus, Robluski, Webb, Yeager, Orlowski, and Acolonis. I'd like to reserve three minutes for rebuttal. Granted. As the court is aware, there are a number of issues raised on the appeal, and I'd like to first address the issues, the two issues that come out of the Foraker case, which involve the, whether a petition has to address a matter of public concern in an employer-employee relationship. Can we short circuit that, though? Because I thought you properly and candidly admitted in your brief that that would require NBank consideration to alter that decision. Well, with. I mean, you cite Judge Greenberg's concurrence or his dissent concurrence, I forget which, but we were quite properly frank that this panel can't, even if we were inclined to disagree with the majority in Foraker, we can't do anything about it. I think we can short circuit that issue with regard to the first issue, which is whether the petition has to be made a matter of public concern. That's the issue which the Third Circuit has clearly decided. Yes, and we differ from every other circuit that has decided the case. Yes. We can't get around that. Not on that. Without embanking it. But really how far Garcetti goes is a real issue. Yes, it is. And I think that comes into play with the second issue on the appeal with regards to Foraker, which is whether a public employee can ever petition his government employer on a matter within the employer-employee relationship. And that's the issue which hasn't been decided by this court, by the Third Circuit. Like I said, the first issue of whether or not the petition must be on a matter of public concern, that I agree that has been decided in Foraker and can't be looked at again. The second issue about whether the employee can ever petition his employer on a matter within the relationship of employer-employee hasn't been decided. These are not really private issues of Mr. Guarneri? Private employment issues? They were private employment issues, yes. But he was the chief of police and it's against the law. I wondered about whether that doesn't make it a little different than a secretary. I mean, as the chief of police, he has certain responsibility vis-a-vis the public, which might make his existence or his tenure a little different than the janitor, who does a perfectly important job, but then the janitor who has been fired. I mean, doesn't a police chief, by his very nature of his job, present a public interest issue? Well, Your Honor, I guess some aspects of his job would be considered public interest, but it's still his private employment. Well, sure. And so, therefore, I think there needs to be a public... But he's a public employee. Right, that is. Let me jump to another issue, because I think that your questions and the argument in my brief very clearly makes a strong argument for our argument on qualified immunity. Qualified immunity, the law is well established there. One of the problems is that the law has to be clearly established, and these are areas of the law. This is an area of the law which I think is not clearly established. Well, let me ask you a question. Do you agree that the right to petition encompasses the right to file a grievance? Yes, Your Honor. I believe a grievance would be included as a petition in the law. I'm sorry, so go back to what you're saying. You're saying it's not clearly established? Yes, Your Honor. The argument under Foraker, both the whether the public employee can ever... And before Foraker, the San Filippo. Yes, yes, and that was Foraker cites the San Filippo. Yeah, sure, it relies on that. Right, yes. Because it was Judge Pollack, and he's known to be a reasonable judge. Yes, Your Honor. And the dean of two law schools. Go ahead. Yes, Your Honor. Those two cases, though, as you pointed out and as I've said in the brief, the decision from this Court differs from the other circuits. The Supreme Court hasn't ruled on the issues. Well, what difference does it make that the law is not clearly established? This isn't a habeas case. We don't have EDBA in front of us. So what is the relevance of the fact that the law is not clearly established? Well, the query for qualified immunity is whether the facts alleged, viewed in light most favorable to the party, show that the officer's conduct violated a constitutional right. Okay, so you're arguing the qualified immunity. Yes. And I wanted to make sure what issue that you're on. Yes, I move the qualified immunity because I think that the issues under Foraker are not – there's no clear decision there because of the conflict in the circuits, because of the lack of a decision from the United States Supreme Court. So does qualified immunity depend on the law having been clearly established? Under the Curley case, Your Honor, Curley v. Clem, which is a 2002 case out of this court, the query becomes would it be clear to a reasonable officer that his conduct was unlawful in the situation he confronted? The two issues I've raised under Foraker, they show that the law is not clearly established as to whether a government employee may petition his government employer and as to whether the public employee's rights are protected when the matter is one of purely private concern. Neither this circuit, like I said, neither this circuit nor the United States Supreme Court have decided that question of whether or not an employee who petitions his employer pursuant to his official duties. But this is a jury decision. I mean, the jury heard this case, whatever it thought about it, thought that your client was really very petty. If we say nothing else, not accepting the marriage certificate, making him go and get a certified copy of the marriage certificate so that his wife could be on his health benefits and the overtime was all of $338. It's going to cost them a lot more for failing to agree to that. They should have known. Shouldn't they have known that you can't do that? Well, Your Honor, first, with regard to the marriage certificate, that went to the life insurance, health insurance benefits. The two issues which the jury found for the plaintiff on in this case, for Chief Guarneri, was the overtime and the issuance of the directives. Oh, yeah. And not with regards to the insurance. But they only did the directives as to him until the arbitrator said they better apply to everybody, right? That is true. I mean, they were really out to get this guy, and couldn't the jury legitimately find retaliation? Well, the jury did. That's what the jury found. The jury found retaliation. And wasn't it legitimate? Wasn't there a basis for that on the record? Well, I would argue that there wasn't a basis for retaliation. Why? Because for two reasons. One, in order to establish causation with regards to retaliation, you have to show evidence of temporal proximity could be construed as evidence of retaliation. And the directives were issued to Guarneri in January 2005. It wasn't until almost two years after he filed his initial grievance. It was his first day back on the job. How much more temporally proximate could they be? Were they supposed to send it to his house while he was not on the job? I thought your arguments were more of a technical nature. You were talking about whether this is cognizable under the petition clause. You're talking about qualified immunity, et cetera. Clearly, there's sufficient evidence in this record from which a reasonable jury could conclude that your client retaliated against the plaintiff. And I understand that argument. One of the issues we've raised on appeal is that there wasn't sufficient evidence in the record for retaliation. Like I said at the outset of my argument, my focus was initially to focus on the issues of whether there's a claim under the petition clause. Could you touch on the issue of punitive damages? Absolutely, Your Honor. It's the appellant's contention that punitive damages were not warranted in this case and should not have been given to the jury as an option. Did you ask the district court to charge the jury separately with respect to punitive and compensatory on a Monell basis? There were two separate verdicts. The verdict had two separate verdicts for compensatory and punitive damages, yes. No, not with respect to the borough. Because punitive damages can't be awarded against a municipality, there was no line on the verdict sheet for punitive damages against the borough. Does that answer your question? Yes. The basis for punitive damages, the jury was presented with the evidence of retaliation, I understand. Yes. But was there anything beyond retaliation that was presented or argued to the jury to justify a punitive damage award? No, Your Honor. In our opinion, there was not. The three guideposts, the most important, there are three guideposts for a reasonableness of punitive damages award. The most important is, of course, the degree of reprehensibility. The court has to consider harm caused was physical or economic, whether the tortious conduct evinced indifference to or reckless disregard for health or safety of others, whether the conduct had financial vulnerability or whether it involved repeated actions or an isolated incident, and whether the harm was the result of intentional malice, trickery, deceit. Was the jury so instructed by the court? There was a punitive damages charge, yes, Your Honor. All right. Couldn't the jury infer callous disregard or evil motive from the testimony presented? I don't believe the jury could. Obviously, the jury did. I think that was, I think punitive damages. But you're not saying that the charge was wrong. No. You're not challenging the charge. I'm not challenging the charge. What we did was move for judgment as a matter of law at the time. You know, it takes a lot for a court of appeals to say the jury shouldn't have come out the way it came out. I understand that, Your Honor. But here, there's really no evidence that supported punitive damages at the time of trial. There's no evidence of physical harm. There was so much pettiness in this case against Mr. Guarnieri. Guarnieri. Even if that is true, Your Honor, if you want to take the appellant's actions as petty, pettiness doesn't rise to the level of punitive damages. The essence of retaliation, the directive that was given to him when he returned to work and the withholding of the overtime pay, is that the essence of retaliation? That's what the claim is, yes. All right. That's also the basis for punitive damage. Yes, Your Honor. Is that correct? Yes. The jury found that both on... I see my time is up. May I finish responding? Go ahead. Answer the question. Okay. The jury had found that there were compensatory damages and there was evidence of retaliation on those two issues and then awarded compensatory damages and punitives on each of those issues. Okay. You've saved rebuttal. I assume Ms. Pollack is going to talk a little bit about the counsel fee issue. So maybe we'll hear you on rebuttal. Yes, Your Honor. I would like to address that, but given my time, I'll save that for rebuttal. Okay. Sure. We'll let you do that. Thank you. You couldn't do it in the Supreme Court, by the way. They're very strict about what you can do on rebuttal, but we're not strict. Thank you, Your Honor. So when you get to the Supreme Court, remember that. I know. May it please the Court, my name is Cindy Pollack and I represent Charles Guarneri. What was the evidence that warranted punitive damages in this case? There was a lot of evidence. For one, there was the marriage certificate. I think having once been in Human Resources, the fact that an employer would ever question the authenticity of a marriage. But they weren't given that in the charge. I mean, they didn't come out and say... You didn't get liability on that, according to Ms. Mihalcher. And I would disagree with that. Explain to us why... She has admitted that liability was assessed against her client for the overtime issue and the directives issue. Can you explain to us why she's wrong on that? Well, during the jury trial, I wanted all of them together because, to me, it's an ongoing animus towards Mr. Guarneri, which your instructions for retaliation, specifically your model instructions, say that if there's an ongoing animus towards an individual, that can be proof of First Amendment retaliation. What do you mean you wanted them all together? Did they get segregated by the trial judge? He segregated the... it was an 18-page verdict slip. So 18 pages this jury had to go through and decipher and prove the directives. What was the jury's answer on the marriage license? I believe the marriage license was included in the directives aspect of it. That's my understanding of it. Where's that in the directives? Can you cite the record for that? To me, I don't believe there was actually a separate one for the marriage license. The directives were just telling him how he should do his job going forward. The marriage license issue was totally different. Well, the district judge did not instruct specifically that issue, but again, your instructions... Wait a minute. Did you ask for an instruction? I have always used your model instruction because I think it's a very good model in the sense that it shows that it tells the jury... What does the model instruction say because we're not trial judges and they're for trial judges? Your model Third Circuit instructions say that the jury can consider any animus towards the individual after he engages in a protected activity. And so to me, that animus is the ongoing animus towards this man, the pettiness towards this man. Isn't the animus what amounts to retaliatory conduct? And punitive damages. It always has to because you can't separate... What you're talking about, though, is the issuance of a directive, which you say was retaliatory, and withholding of overtime pay, which you say was retaliatory. Now, you now mentioned the marriage certificate, even though there was no finding. I don't understand there to be a finding by the jury in this case. So you have two essential events that your case is based on for a finding of retaliatory conduct, and I'm wondering what beyond that is there to support punitive damages. Well, the jury, seven peers of my client, found that the defendants were liable for compensatory impunities. They were instructed that they could consider any of the activities, the ongoing activities towards this man, just because the defendant... That's not, with all due respect, you didn't answer Judge Fuentes' question. We know what the jury found. We're here to ascertain whether contained in this transcript, which I read, where in there is there grounds to support a punitive damages award unless we made every retaliation case a punitive case. In this case, the day that he returns, after fighting for two years to get back there, he's slapped with these 11 directives. That changed his job. He's singled out. That is going beyond just simply retaliating against someone. It's showing an evil intent, a reckless disregard. It was the marriage license. The Department of Labor comes in and tells the employer, you are violating the law, and they still won't pay him. That's the evidence of retaliatory conduct that you presented to the jury, and you are familiar with the Brennan v. Norton case. Judge McKee wrote the opinion explicitly stating that punitive damages require more than the retaliatory motive itself. So you need more than retaliation to support punitive damages. The other question is, what more do you have than what you use to establish retaliatory conduct? I have the fact that the employer, instead of, before he was terminated, he was allowed to do programs that cost the borough absolutely nothing. When he came back, they wouldn't let him do it. They took away your little judge badges. They took that down, and he wasn't allowed to sit at council meetings. That is treating someone differently and showing that you have a reckless disregard because you are represented by council at this time and should know that you can't retaliate against someone when they petition the government to... You need to set down the ground rules in writing. The directives were created by council. Mr. Blissman testified ad nauseum about that. Council says, look, you've obviously had a lot of tension with this guy. You guys have disagreements. He's grieving. He wins the grievance. Of course, he lost part of the grievance. They found that the suspension was valid. One year. So the lawyer says, put it all in writing so the guy knows what the ground rules are. Don't you, instead of giving someone directives, don't you sit down with them and say, let's... No, we don't answer questions. We ask them. Sorry. I mean, that's what I would do as an HR person. I wouldn't slap you with directives. I'd call you and say, let's talk about this. Do you advise your clients that when they have trouble in the employer-employee relationship, that the best thing to do is to just have a verbal hash-out and don't put anything in writing so the ground rules are clear? No, I would say, talk to your employer, work it out. Try to work it out before you do anything, sue or something like that. I usually represent employees, not employers, so it's a little different on what I would advise. However, to me, why wouldn't you sit down with this man? Why wouldn't you let his Fraternal Order of Police speak out at meetings on his behalf? Why are you coming down on him? And the jury found that... These are things that you argued before the jury, in other words. Yes. Tell me, what is the delay in life insurance benefits issue? He was, when he got back, he didn't get automatic life insurance. Had he died on the job, had he pulled someone over and he died, gunshot, he would not have had life insurance. But the jury found against you on that? Yes, they did not find it as a specific instance of retaliation. And that's not connected with the marriage license issue? No. Because it was his life insurance and they had argued at trial it was because of his weight. His weight? His weight that they weren't able to give it. It was not their doing. Carrier rejected it? Well, had he never been fired, he wouldn't have ever lost his... But it's the borough's fault that the carrier has a problem with the insurability of the employee? Well, to me, the borough should not have ever fired this man unjustly. That was a finding that was already... Your suspension was validated by the arbitrator. The majority of times an arbitrator will split the baby, so to speak, and give one side one thing. Well, that undermines your punitive argument. I mean, you took the words right out of my mouth about three days ago. I mean, that undermines your punitive argument. This jury listened clearly, went through an 18-page verdict slip and found the defendants did act with disregard for his First Amendment rights. I had a trial right after this, and another set of jurors found these same defendants guilty, so to speak. Was that Lowman? Talk to us about the counsel feed, if that's all right with my... May I just wrap up? Go ahead. I read the trial transcript, and I couldn't find anything beyond your client suffering stress. When you called his doctor... Yes. I mean, the doctor added nothing. You put a few people in who basically said, you know what, he's a good guy, he wasn't his normal self, he was stressed. That was the word that came up over and over again. Am I missing anything? Was there anything else beyond him suffering the stress as a result of the pettiness that the borough was foisting upon him? Yes, weight loss. Weight loss is bad? I thought that was part of the stress. I kind of lumped that in with the stress. The stress and the weight loss were part and parcel. And I would disagree, because you can have stress, and I think it's more when you have a physical manifestation of it that actually shows the emotional distress that I can capture in a verdict, I think. He lost weight, he had financial problems. They fought him for $300. Where in the record is the evidence of the financial problems? In December of 2006. They refused to allow him overtime, so he had a financial hardship. $338, we're talking the overtime. I mean, we're not talking about thousands of dollars. And if people don't make a lot of money, $300, $500 does mean a lot of money to them. I interrupted Judge Hartman. Go ahead. We know what the borough did to him. The question is, where in the record is this evidence of additional suffering that he had to suffer? Well, Your Honor, they did not bring that up as an appealable issue. And I think that it was contained in the record, the stress of, again, weight loss, financial problems. He was different. He was not as happy as he once was. That is all evidence that supported that verdict. But the defendants have not appealed it. They said there's not sufficient evidence for punitive work. And one of the points they raised was that you look at the suffering that a person of ordinary firmness would undergo. I think you've tried to answer my question. Yeah, I think we should get to your appeal, which is on the counsel fees. As far as I can tell, you object because the district court knocked out certain hours as not appropriate and then, for the same reason, cut your counsel fee by 50%. Am I reading it wrong? No, you're reading it right. The district court had decided that I had duplicated hours and he had reduced it by 49.3. And then he, again, after he came up with the load star, which that's all I'm asking for. I'll take the lumps. You don't mind the 225 rather than the 300? Well, no, no, no, I do mind that, too. But I will take whatever his calculations, whatever he found that was an applicable duplicate. It's the 50% that you're objecting to. And this court in Cunningham had said that negative enhancements or I should say negative multipliers are not permissible. That's when they don't ask for it, right? Correct. Yes, Your Honor. This was sua sponte. How was I to know that he was going to bring up similar cases? Had he done that, I would have presented him with a copy of his decision in which he awarded someone $85,000. I know a lot about counsel fee. I was one of the people in Lindy, my maiden name, a couple hours, that got into the load star decision that started all this. And then I left the practice of law and went to teach. So you'll see. Thank you, Mr. Korman, for a little bit of hours if you read that opinion. But I don't understand what the court did here. Maybe I should ask your friend. The court seems to have used against you the fact that you had experience in the field. I just don't understand what the district court was doing in his counsel fee analysis. I would agree with you because in one sense he gives me a low hourly rate. Then he, in part of the decision, says that I'm experienced. And because I was experienced... Did you object to the reduction of certain hours? 43 and 3 tenths, I guess, was duplicative. And did you object to the district court knocking out 33.5 of your time as successive? Did you put objections on the record to those two rulings? Well, he had made those decisions. No, no. I'm asking you if you objected when the district... I want to know if you have preserved your objection. Yes, because... After he ruled, I can't preserve it after he rules. He ruled those after... put into issue what they're objecting to. Well, wait a minute. Maybe I don't understand what went on. But I have two trial judges, former trial judges, next to me so they can answer it. When did the judge rule on the counsel fee? Was it after the trial? He didn't even have a hearing. He had no evidentiary hearing. So he looked at your petition for counsel fee and did the defendants file something that said that's too much and the hours are... Okay, so he had those papers in front of him. And then what happened? Then I filed my reply brief. And then he issued a ruling.  filed any objections or a motion to reconsider or... What can you do? That's why I'm here. You can take an appeal. You could move to reconsider too, but you didn't have to. I didn't have to. He already made a finding to me, motions for reconsideration. Are you going to really change your mind once you make a decision? It's an abusive discretion standard. So where precisely did the judge make an error of law that would justify arson as an abusive discretion? It is preliminary. And it's not abusive discretion. Yes, it's too pronged. And I'm not asking for you to undo his findings of what was inapplicable duplicate. I'm not asking that. To me, I'm really asking only to look at the law. Can you apply a negative multiplier here? When they didn't even ask for it. More than 50% reduction. That's what I'm looking at. Then I'm also asking about... He considered that you were working in the other case as well. He already deducts that. Your problem is the double counting. I think we understand your position. Thank you, Ms. Pollack. Nice to see you. I keep seeing your name on these briefs. I guess it's the first time I've seen you in person. We'd like to hear your answer to this. The counsel fee issue. Yes, Your Honors. First of all, it wasn't double counting. The court went through a number of objections we filed to her petition for counsel fees. Made the reduction in hours. Then looked at the Lodestar. The court has discretion to downwardly adjust the amount. The court used the same issues to knock out 50% after the Lodestar that he had used in knocking out the specific hours. To me, that's novel. Yes, Your Honor. I would disagree with that reading of the court's opinion. What were his reasons for taking 50% off of the Lodestar? He looked at it and the plaintiff's counsel had submitted documents to state that she took these cases on a contingency fee. It doesn't state what her fee is. The Supreme Court, by the way, has said that you're not supposed to consider contingency fees. He acknowledged that. The district court did acknowledge that in his opinion. He looked at it anyway, even though the Supreme Court has said you're not supposed to. You have the opinion in the appendix. I'm sorry, I didn't give you a chance. Of course, he looked at everything and considered everything, but what were his reasons for the 50% reduction in the Lodestar? He determined that the Lodestar amount, which turned out to be over $100,000 for a $97,000 award from the jury, was too high for that award. Why? Because of the nature of the work that the plaintiff's counsel had to do in this case. This was a case that overlapped significantly with the Lowman case. But that is taken care of when he deducted for the duplicate of hours. Wasn't that the basis for the deduction of 35-something or certain hours? But the similarity of the claims and the fact that the plaintiff's counsel does this work almost exclusively... You're an expert. It should get more rather than less. Can you rationalize that? Yes, Your Honor, because the fact that she does this almost exclusively, it wasn't a novel issue. These were not novel retaliation issues that haven't been seen before in the courts. But that goes into the number of hours. The number of hours reduced for a specific duplicating and duplicating in the sense that there was, for instance, a 6-hour deposition thing for a deposition that was in both cases. That was split. So that took care of... I thought the second reduction was based on limited success. Wasn't that the judge's rationale that I'm going to reduce you further because of limited success? Yes, there was also the limited success adjustment and also a similarity to the Lowman award. The court had just decided the Lowman attorney... I think, at least speaking for myself, that seems clear that should be part of the initial reduction. That falls under the rubric of duplication. But tell us why... The Supreme Court has said the Lodestar is presumptively reasonable and absent rare and exceptional circumstances, the Lodestar is the fee to be awarded. Tell us what's rare or exceptional about this case where the Lodestar wasn't the right number. This was a case where... It seems like a run-of-the-mill case. You have an attorney fee award that's greater than the amount awarded... That happens all the time. That happens all the time in these cases where the lawyer has a greater financial stake in victory than the client. That happens all the time. And the Supreme Court has said there's nothing wrong with that. Congress is so legislated and the Supreme Court is so endorsed. And the law has also been clear and firm that the civil rights attorney fee law is not meant and not designed to promote windfalls for attorneys. And the court in this case found that this was a windfall. Depends on how you define windfall. If windfall means giving them more than they earned, you're right. But you can't define windfall to mean more money than the client won. Because that violates the principle that Judge Slover and I were just foisting upon. You can't say the client only got $20,000 and the lawyer can't get $80,000. That happens all the time and that's the law. That is correct, but this is a case where there was a windfall. The district court is familiar and the standard is abusive discretion. What's the windfall? Are you defining windfall because Ms. Pollack got more money than the client? No, I'm defining windfall as the $100,000 award. But it wasn't a two-day trial. It was a contentious, it took me a long time to read this record. The trial lasted quite a while. It was hotly contested by the parties. Unfortunately, when you're a defendant defending a case brought under 1983, the more contested it is the more money the plaintiff is going to earn. The plaintiff's lawyer is going to earn if she prevails. Why don't you answer this and then your time is up. My response to that is that I think that issue, the idea that what you've just hit on the head is that this idea that a plaintiff's attorney, and we do plaintiff's defense work at my firm, and we're on the other side of this sometimes. The issue is that you can have plaintiff's attorneys then driving a trial to be more contentious to be, and you've seen this transcript, to be very contentious, to be much longer than it has to be. That's the judge's job. Yes, Your Honor, it is the judge's job. I just wrote an opinion on that. It's a risky maneuver, though, because you could lose the case after spending so much time. It is, Your Honor, but you can also, and what often happens in this case, is come back with nominal damages. That's not what happened here. I'm not saying... No, she did very well with the jury. Perhaps too well. For us to decide. Okay, I think we've heard you. I would like you both to come up. Would you turn off the mic?